UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-08-270 |
| | § | |
| LIVE OAK COUNTY POST NO. 6119 | § | |
| VETERANS OF FOREIGN WARS; dba VFW | § | |
| POST 6119; aka LIVE OAK COUNTY VFW | § | |
| POST 6119, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

On this day came on to be considered:

(1) Plaintiff's Motion for Leave to File First Amended Complaint (D.E. 25);
(2) Defendant's Motion to Dismiss (D.E. 4);
(3) Plaintiff's Amended Motion for Summary Judgment (D.E. 20);
(4) Defendant's Motion for Summary Judgment (D.E. 40);
(5) Defendant's Motion for Sanctions (D.E. 9);
(6) Plaintiff's Motion to Strike (D.E. 12); and
(7) Defendant's Motion to Strike (D.E. 33).

For the reasons discussed below, all of the above-listed motions are hereby DENIED.

### I.   Jurisdiction.

The Court has federal subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, because Plaintiff brings suit pursuant to 47 U.S.C. §§ 553 and 605.

### II.   Procedural Background.

On May 6, 2008, Plaintiff filed its original complaint with the Houston Division of the United States District Court for the Southern District of Texas. (D.E. 1.) Plaintiff named as Defendants (1) Live Oak County Post No. 6119 Veteran's of Foreign Wars ("VFW 6119") and (2) Dennis R. Zamaow, "owner and/or manager" of VFW 6119, and brought claims alleging

violations of 47 U.S.C. §§ 553 and 605.  (Id.)  On August 14, 2008, Plaintiff dismissed Defendant Zamaow without prejudice. (D.E. 14.)  That same day, the case was transferred from the Houston Division to the Corpus Christi Division of the Southern District of Texas.  (D.E. 15.)

Both before and after the case was transferred, both parties filed a number of motions with the Court, all of which are addressed here.  Defendant filed with the Court five motions: (1) a June 30, 2008 motion to dismiss Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7) (D.E. 4), (2) a July 30, 2008 motion for sanctions against Plaintiff (D.E. 9), (3) an October 21, 2008 motion for summary judgment (D.E. 40), and (4) an October 17, 2008 motion to strike all of Plaintiff's summary judgment evidence (D.E. 33).  Plaintiff also filed with the Court four motions: (1) an August 5, 2008 motion to strike certain affidavits in support of Defendant's motion to dismiss (D.E. 12), (2) an August 19, 2008 motion for summary judgment (D.E. 17), (3) an August 26, 2008 amended motion for summary judgment (D.E. 20), and (4) a September 22, 2008 motion for leave to file a first amended complaint (D.E. 25).

### III.    Factual Background.

####    A.    Plaintiff's Allegations.

Plaintiff makes the following allegations in its original complaint (D.E. 1):

Plaintiff is the license company authorized to sub-license the closed-circuit telecast of the May 6, 2006 Championship boxing match between Oscar de la Hoya and Ricardo Mayorga, including undercard or preliminary bouts (collectively "the Event") at closed-circuit locations throughout Texas such a theaters, arenas, bars, clubs, lounges, and restaurants.  (D.E. 1, ¶ 6.)  On May 6, 2006, Defendant willfully intercepted and/or received the interstate communication of the Event, or assisted in the in the receipt of the interstate communication of the Event.  (Id., ¶ 12.) Defendant then transmitted, divulged and published said communication, or assisted in

transmitting, divulging and publishing said communication, to patrons at VFW 6119.  (Id.) Defendant's actions were committed willfully and with the express purpose and intent to secure a commercial advantage and private financial gain.  (Id., ¶ 13.)  Defendant was not authorized to intercept, receive or transmit the communication of the Event or to assist in such actions in any form or at any time.  (Id., ¶ 16.)

      **B.**     **Summary Judgment Evidence.**

The parties' versions of the facts giving rise to this dispute vary dramatically.  (See D.E. 17, 20, 34 and 40.)  Each party presents evidence in support of its proffered fact pattern.  (Id.)

Plaintiff's summary judgment evidence supports the following set of facts:  Plaintiff had the exclusive license to broadcast the Event "at commercial closed-circuit television exhibition outlets, such as theaters, bars, clubs, lounges, restaurants and the like …"  (PX-A, ¶ 5, PX-A-1.)[1] To legally receive the Event in Texas, these types of commercial outlets were required to enter into an agreement with Plaintiff and pay a sublicense fee.  (PX-A, ¶ 6, 8.)  Defendant neither contracted with Plaintiff, nor paid the required fee.  (PX-A, ¶ 9.)  Regardless, Defendant showed the Event.  (PX-A-2.)  On May 6, 2008, at approximately 8:00 PM, Plaintiff's auditor, David Dominguez, viewed the Event at VFW 6119.  (PX-A-2.)  The bar was open and Mr. Dominguez purchased a drink.  (Id.)  Mr. Dominguez witnessed the Event playing on two television screens, and counted up to thirty-two people in attendance.  (Id.)

Defendant's summary judgment evidence, on the other hand, supports a different set of facts:  Mark L. Dobbins, the Quartermaster for VFW 6119, is a DirecTV subscriber.  (DX-6 at 1-3.)[2]  On May 6, 2006, he ordered the Event from his residence, through his residential DirecTV account, with the intent to watch it at home.  (DX-6 at 2-3.)  Immediately prior to the Event,

---

[1]     "PX-__" refers to the exhibits to Plaintiff's Amended Motion for Summary Judgment (D.E. 20).

[2]     "DX-__" refers to the exhibits to Defendant's Motion for Summary Judgment (D.E. 40).

however, he lost power to his residence. (DX-6 at 3; DX-9 at 3.) Wishing to watch the Event, he, his wife, his three step-children and two friends took his DirecTV box to the VFW 6119 Canteen, a lounge operated by VFW 6119, and set it up there. (DX-6 at 3; DX-9 at 3.) That night, the Canteen was not open to the public. (DX-6 at 2; DX-9 at 3.) The only persons who viewed the Event at the Canteen were the seven persons, mentioned above, who would have watched the Event at Mr. Dobbins' residence had he not lost power. (DX-6 at 2, DX-9 at 4.)

## IV. Plaintiff's Motion for Leave to File a First Amended Complaint (D.E. 25).

On September 22, 2008, Plaintiff filed a motion for leave to file a first amended complaint with the Court. (D.E. 25.) Plaintiff seeks to join as a Defendant Mark L. Dobbins, the DirecTV subscriber who purchased the Event. (Id., ¶¶ 3-5.) Defendant objects to the addition of Mr. Dobbins as a Defendant, arguing that Plaintiff was aware of Mr. Dobbins' involvement in the incident giving rise to this lawsuit as early as June 7, 2007, almost one year before Plaintiff filed its original complaint. (D.E. 31.) Defendant attaches to its motion a letter faxed by Mr. Dobbins to Thomas P. Riley, counsel for Plaintiff, on June 7, 2007, explaining the circumstances that led to Mr. Dobbins watching the Event at VFW 6119. (Id., Ex. 1 at 4-6.)

Federal Rule of Civil Procedure 15(a) requires a trial court "to grant leave to amend 'freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend.'" Lyn-Lea Travel Corp. v. Am. Airlines, 283 F.3d 282, 286 (5th Cir. 2002) (citation omitted). A district court must possess a "substantial reason" to deny a request for leave to amend, id., but "leave to amend is by no means automatic." Halbert v. City of Sherman, 33 F.3d 526, 529 (5th Cir. 1994) (citation omitted). In deciding whether to grant leave to amend, the district court may consider a variety of factors including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, and undue

prejudice to the opposing party." Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 598 (5th Cir. 1981).

Defendant has presented evidence that Plaintiff was aware, well before it filed its original complaint, that Mr. Dobbins was involved in the events giving rise to this lawsuit. (D.E. 31.) This issue was discussed at the initial pre-trial conference in this matter and, while the Court did not rule at that time, it did advise Plaintiff that it was likely "too late to add [Mr. Dobbins]." This is particularly true in light of the fact that Plaintiff filed a motion for summary judgment seeking to resolve all issues in this case more than one month prior to filing its motion for leave. (D.E. 17 (filed August 19, 2008).)  Based on the foregoing, the Court finds that the four-and-a-half month period between the filing of Plaintiff's original complaint and the filing of its motion for leave to amend constitutes an undue delay. Accordingly, Plaintiff's motion for leave to file a first amended complaint is hereby DENIED.

## V.     Defendant's Motion to Dismiss (D.E. 4).

On June 30, 2008, Defendant filed a motion to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7). (D.E. 4.) Plaintiff filed a response in opposition to Defendant's motion on July 21, 2008. (D.E. 8.)

### A.     Rule 12(b)(6) Motion to Dismiss.

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" Cuvillier v. Sullivan, 503 F.3d 397, 401 (5th Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007)). "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, "this basic deficiency should … be

exposed at the point of minimum expenditure of time and money by the parties and the court.'"'" Cuvillier, 503 F.3d at 401 (quoting Twombly, 127 S. Ct. at 1966 (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, at 234 (internal citations and quotation marks omitted))). In deciding a motion to dismiss "[w]e must accept all well-pleaded facts alleged in the complaint as true and must construe the allegations in the light that is most favorable to the plaintiff." Cent. Laborers' Pension Fund v. Integrated Elec. Servs., 497 F.3d 546, 550 (5th Cir. 2007) (citing Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005)). "Nevertheless, '[w]e do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.'" Id.

Defendant moves to dismiss Plaintiff's section 553 and 605 claims pursuant to Rule 12(b)(6). (D.E. 4.) Sections 553 and 605 are designed "to discourage theft of cable services." Prostar v. Massachi, 239 F.3d 669, 673 (5th Cir. 2001) (citations omitted). "Section 553(a)(1) provides that 'no person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so.'" Id. (quoting 47 U.S.C. § 553(a)(1)). "Section 605 similarly states that 'no person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto." Prostar, 239 F.3d at 673 (quoting 47 U.S.C. § 605(a)). "In addition, section 605 prohibits anyone unlawfully receiving such communications from divulging or publishing the information or transmission." Id.

Plaintiff has sufficiently alleged claims under sections 553 and 605.[3]  (D.E. 1.)  In its complaint, Plaintiff alleges that it had a contract to distribute the broadcast of the Event and that it entered into agreements with Texas businesses to publicly show the Event.  (D.E. 1, ¶ 6, 8.) Plaintiff further alleges that Defendant did not have a contract or authorization to show the Event at VFW 6119, and yet willfully intercepted and displayed the event to VFW 6119 patrons "with the express purpose and intent to secure a commercial advantage and private financial gain."[4] (Id., ¶ 10, 12-13, 16.)  Thus, Plaintiff has adequately put Defendant on notice that it is pursuing a claim under § 605 or § 553 for Defendant's knowingly, willfully, and unlawfully intercepting the fight on May 6, 2006, and for exhibiting the fight for purposes of commercial advantage or private financial gain.  See J&J Sports Prods. v. 4326 Kurz, Ltd., C.A. No. 07-3850, 2008 U.S. Dist. LEXIS 83511, at *10-11 (E.D. Pa. Oct. 17, 2008).

B.      Rule 12(b)(7) Motion to Dismiss.

"Rule 12(b)(7) allows dismissal for 'failure to join a party under Rule 19.'"  HS Res., Inc. v. Wingate, 327 F.3d 432, 438 (5th Cir. 2003) (quoting Fed. R. Civ. P. 12(b)(7)).  "Rule 19 provides for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue."  Wingate, 327 F.3d at 438 (citing Fed. R. Civ. P. 19(a); Pulitzer-Polster v. Pulitzer, 784 F.2d 1305, 1308 (5th Cir. 1986) ("The federal rules seek

---

[3]     "[I]t is not clear that damages resulting from one unlawful act of cable or satellite 'piracy' are recoverable under both § 553 and § 605."  Innovative Sports Mktg. v. Medeles, C.A. No. H-07-3281, 2008 U.S. Dist. LEXIS 31409, at *3-4 (S.D. Tex. Apr. 15, 2008).  "The Fifth Circuit has not explicitly addressed whether a plaintiff can recover under both sections for the same action."  Id. at *4 (citing Prostar v. Massachi, 239 F.3d 669, 673 (5th Cir. 2001) (recognizing the disagreement on the issue of double recovery and citing United States v. Norris, 88 F.3d 462, 466 (7th Cir. 1996) for the proposition that a plaintiff may not recover under both sections)).  "However, even the courts that have held that liability under § 553 and § 605 overlap often have chosen to impose liability under § 605 and not § 553."  Innovative Sports Mktg., 2008 U.S. Dist. LEXIS 31409, at *4 (citing Ent'mt by J & J v. Al-Waha Enters., 219 F. Supp. 2d 769 (S.D. Tex. 2002) (explaining that courts generally award damages under section 605 because it is more generous to plaintiffs)).  Plaintiff has adequately pled violations of both section 553 and 605; Plaintiff, however, must address whether § 553, § 605, or both apply prior to the award of any damages.

[4]     Note that Plaintiff alleges in its complaint that Defendant broadcast the Event to "patrons," i.e., customers, of VFW 6119, implying that VFW 6119 was open for business.  (D.E. 1, ¶ 12.)  The Court addresses Plaintiff's allegation that Defendant is liable even if VFW 6119 was closed on the night in question in section VI below.

to bring all persons that may have an interest in the subject of an action together in one forum so that the lawsuit can be fairly and completely disposed of. In accord with this goal, Rule 19 seeks to bring into a lawsuit all those persons who ought to be there by requiring joinder.")). "It further provides for the dismissal of litigation that should not proceed in the absence of parties that cannot be joined." Wingate, 327 F.3d at 438 (citing Pulitzer-Polster, 784 F.2d at 1309 (explaining that "Rule 19's emphasis on a careful examination of the facts means that a district court will ordinarily be in a better position to make a Rule 19 decision than a circuit court would be.")). "A prerequisite to a proper dismissal for failure to join an indispensable party is that the absent party, if added, would divest the court of subject-matter jurisdiction." August v. Boyd Gaming Corp., 135 Fed. Appx. 731, 732 (5th Cir. 2005).

Defendant moves to dismiss this action pursuant to Rule 12(b)(7) based on Plaintiff's failure to join DirecTV as a Defendant. (D.E. 4.) Defendant, however, has not alleged, let alone demonstrated, that DirecTV's presence in the lawsuit would divest this Court of federal subject matter jurisdiction. See August, 135 Fed. Appx. at 732. Furthermore, Defendant has not shown that (1) "in [DirecTV's] absence, the court cannot accord complete relief among existing parties," or that (2) "[DirecTV] claims an interest relating to the subject of the action." Fed. R. Civ. Pro. 19(a); see also Vinson, 2003 U.S. Dist. LEXIS 26180 (adjudicating §§ 553 and 605 claims against a defendant who purchased a broadcast from DirecTV and showed it commercially without including DirecTV as party). Defendant states merely that "[i]f it is the Plaintiff's claim that Dobbins, as a subscriber of DirecTV was not entitled to receive transmission of this fight through his DirecTV receiver, then DirecTV is a proper and necessary party to this lawsuit." (D.E. 4, ¶ 15.) The Court is not persuaded by this argument and, thus, Defendant's 12(b)(7) motion to dismiss is hereby DENIED.

**VI.     Plaintiff's and Defendant's Motions for Summary Judgment (D.E. 20, 40).**

On October 19, 2008, and August 26, 2008, Plaintiff filed with the Court a motion for summary judgment and an amended motion for summary judgment, respectively. (D.E. 17, 29.) On October 17, 2008, Defendant filed its response in opposition to Plaintiff's amended motion for summary judgment, combined in a single document with its own motion for summary judgment, as two separate docket entries. (D.E. 32, 34.) Defendant also filed its exhibits in support of its motion for summary judgment as two additional docket entries. (D.E. 35, 36.) The Court struck Defendant's exhibits from the record for procedural errors. (D.E. 37, 38.) Defendant then re-filed its response in opposition to Plaintiff's motion for summary judgment and motion for summary judgment twice more, on October 21, 2008, "to corporate USDC Docs. 35 and 36 struck by the Court on October 20, 2008." (D.E. 39, note 1, D.E. 40, note 1.) On November 11, 2008, Plaintiff filed its response in opposition to Defendant's motion for summary judgment. (D.E. 44.)

     **A.     Summary Judgment Standard.**

Federal Rule of Civil Procedure 56 states that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). "[O]n summary judgment, the moving party has the initial burden of establishing that there are no issues of material fact and that it is entitled to judgment in its favor as a matter of law." Breen v. Tex. A&M Univ., 485 F.3d 325, 331 (5th Cir. 2007) (citing Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 246-47 (5th Cir. 2003)). "If the moving party meets this burden, the burden then shifts to the non-moving party to point to evidence showing that an issue of material fact exists." Breen, 485 F.3d at 331 (citing Rivera, 349 F.3d at 247). "In determining

whether summary judgment is appropriate, we view all of the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Breen, 485 F.3d at 331 (citing Coleman v. Sch. Bd. of Richland Parish, 418 F.3d 511, 515-16 (5th Cir. 2005)).

### B. There Exist Issues Of Fact That Preclude The Entry of Summary Judgment.

Based on the parties' wildly divergent versions of the facts, this case seems rife with the type of factual issues that would preclude the entry of summary judgment. See supra section III(B). At the very least, there exists an issue of fact with respect to whether or not Defendant acted "willful[ly] and 'for purposes of direct or indirect commercial advantage or private financial gain.'" (D.E. 20, ¶ 31.)

Regardless, Plaintiff argues that, even if Defendant's version of the facts is true, Plaintiff is entitled to summary judgment because "[t]o establish liability, all Plaintiff must show is that the Event was shown in Defendant's establishment and that such exhibition was not authorized by Plaintiff." (D.E. 20, ¶ 15.) To support its argument, Plaintiff relies primarily on case law addressing situations in which an event was shown without authorization at an establishment, such as a bar, that is open to the public. (D.E. 20, ¶ 13 (citing Vinson, 2003 U.S. Dist. LEXIS 26180, at *6-7 (unauthorized showing of an event at a bar open to the public); KingVision Pay-Per-View, Ltd. V. Williams, 1 F. Supp. 2d 1481, 1485 (S.D. Ga. 1998) (unauthorized showing of an event at a bar open to the public); Nat'l Satellite Sports, Inc. v. Eliads, Inc. d/b/a Melody Lane Lounge, 253 F.3d 900, 916-917 (6th Cir. 2001) (unauthorized showing of an event at a bar open to the public)).) Plaintiff further relies on a Middle District of Florida case, which addresses the "private viewing exception,"[5] and concludes that:

---

[5] 47 U.S.C. § 605(b) states that "[t]he provisions of subsection (a) of this section shall not apply to the interception or receipt by any individual, or the assisting (including the manufacture or sale) of such interception or

> According to the legislative history, the drafters of the bill neither contemplated nor intended that the "private viewing" exception include private cable systems or "display of satellite cable programming in the public area of an apartment building, condominium, or housing complex, or in taverns, restaurants, or fraternal halls."

American Television & Communications Corp. v. Floken, Ltd., 629 F. Supp. 1462, 1469 (M.D. Fla. 1986) (quoting 1984 U.S. Code Cong. & Ad. News at 4749-50).

These cases are factually distinguishable from the case presented by Defendant. See supra section III(B). Defendant asserts that Mr. Dobbins, a DirecTV subscriber, purchased a television event through his residential DirecTV account, intending to watch the event at his private residence with a small group of family members and friends. Id. Unfortunately, for reasons beyond his control—*i.e.*, a power outage at his private residence—Mr. Dobbins and his small group of family and friends were forced to move to a different location. Id. Mr. Dobbins chose the VFW 6119 Canteen, a commercial establishment that, at the time, was closed to the public. Id. The Event was not broadcast to patrons of the establishment, but rather to only those persons who would have watched the Event in Mr. Dobbins' home had Mr. Dobbins not lost power. Id.

The legislative history of the Cable Communications Policy Act of 1984, Pub. L. No. 98-549, 98 Stat. 2779 ("Cable Act") makes clear that the Act was designed to eliminate cable *theft*:

> The Committee is extremely concerned with a problem which is increasingly plaguing the cable industry—the theft of cable service. This problem has taken on many forms from the manufacture and sale of equipment intended to permit reception of cable services without paying for it, to apartment building dwellers "tapping" into cable system wire in a building's hallway that is used for providing service to a neighbor's apartment unit, to the sale by building superintendents of cable converters left behind by previous tenants to new tenants. Such practices not only often permit one to obtain cable service without paying the installation and hook-up costs, but also, for instance, involve individuals gaining access to

---

receipt, of any satellite cable programming for **private viewing** …" (Emphasis added.) 47 U.S.C. § 605(d)(4) defines private viewing as "the viewing for private use in an individual's dwelling unit by means of equipment, owned or operated by such individual, capable of receiving satellite cable programming directly from a satellite."

premium movie and sports channels without paying for the receipt of those services.

See H.R. Rep. No. 98-934, at 83, reprinted in 1984 U.S.C.C.A.N. at 4720; see also Prostar v. Massachi, 239 F.3d 669, 673 (5th Cir. 2001) ("The legislative history associated with section 553 and the amendments to section 605 reveals that one of Congress's principal objectives was to discourage theft of cable services.") (citations omitted).  In the factual scenario set forth by Defendants, there is no *theft* implicated.  The Court will, however, consider further briefing on this issue if filed before the April 15, 2009 dispositive motions deadline.  (D.E. 30, ¶ 4.)

### VII. Defendant's Motion for Sanctions (D.E. 9).

Defendant requests that the Court impose sanctions against Plaintiff because Plaintiff's case in "frivolous" and "presented for an improper purpose to harass the Defendant[] …"  (D.E. 9, ¶¶ 4, 6.)  The Court finds that sanctions are unwarranted at this time and, thus, DENIES Defendant's motion.

### VIII. Plaintiff's Motion to Strike (D.E. 12) and Defendant's Motion to Strike (D.E. 33).

Plaintiff seeks to strike from the record the affidavits of Dennis R. Zamzow (D.E. 10) and Mark L. Dobbins (D.E. 11) in support of Defendant's motion to dismiss (D.E. 4), and Defendant seeks to strike from the record all of Plaintiff's summary judgment evidence (D.E. 33, ¶ 1).  Both parties' motions to strike are hereby DENIED.

### IX. Defendant's Jury Demand.

During the initial pre-trial conference in this matter, the Court informed that parties that this case would be tried to the Court.  The Court now recognizes that there exists conflicting case law with respect to whether or not there is a right to trial by jury in this type of case.  See Time Warner Cable v. Kline, No. 00 Civ. 28972000, U.S. Dist. LEXIS 18280, at *5-6 (S.D.N.Y. Dec. 12, 2000) (citations omitted) ("There is a split of authority on the issue of whether there is a right

to a trial by jury in an action seeking statutory damages for the illegal interception of cable television signals.")  Accordingly, the Court will consider briefing on this issue if filed before the April 15, 2009 dispositive motions deadline.  (D.E. 30, ¶ 4.)

## X.  Conclusion.

Based on the foregoing:

(1) Plaintiff's Motion for Leave to File First Amended Complaint (D.E. 25) is hereby DENIED;
(2) Defendant's Motion to Dismiss (D.E. 4) is hereby DENIED;
(3) Plaintiff's Amended Motion for Summary Judgment (D.E. 20) is hereby DENIED;
(4) Defendant's Motion for Summary Judgment (D.E. 40) is hereby DENIED
(5) Defendant's Motion for Sanctions (D.E. 9) is hereby DENIED;
(6) Plaintiff's Motion to Strike (D.E. 12) is hereby DENIED; and
(7) Defendant's Motion to Strike (D.E. 33) is hereby DENIED.

SIGNED and ORDERED this 24th day of February, 2009.

_____
Janis Graham Jack
United States District Judge